GWENDOLYN DENEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Deney v. Commissioner
Docket No. 28260-88
United States Tax Court
T.C. Memo 1990-488; 1990 Tax Ct. Memo LEXIS 536; 60 T.C.M. (CCH) 724; T.C.M. (RIA) 90488; September 11, 1990, Filed *536 Decision will be entered for the respondent. Gwendolyn Deney, pro se. Janice Chenier Taylor, for the respondent. KORNER, Judge. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION For the year 1983, respondent determined a deficiency of income tax against petitioner in the amount of $ 10,169, together with an addition to tax under section 6651(a)(1) [1] in the amount of *537 $ 1,073.83. The issues which we must decide are: 1. Was the sum of $ 30,000, paid by petitioner's corporation for her benefit in 1983, properly reportable by petitioner as gross income for that year? 2. Did petitioner sustain any form of deductible loss in 1983? 3. Is petitioner liable for the addition to tax under section 6651(a)(1) for the untimely filing of her 1983 return? FINDINGS OF FACT Some of the facts herein were stipulated, and such stipulated facts, together with attached exhibits, are incorporated herein by this reference. At the time of filing her petition herein, petitioner was a resident of Baton Rouge, Louisiana. On December 1, 1981, petitioner entered into a purchase agreement with Melinda Walton to purchase 75 shares of Melinda Walton & Associates, Inc. (hereinafter the corporation) *538 for $ 120,000, inclusive of imputed interest at 12 percent. Consideration for the sale was to be paid as follows: $ 5,000 to be paid on the date of purchase; one promissory note in the amount of $ 110,000 to be paid in 44 equal monthly installments of $ 2,500 inclusive of interest; and one promissory note in the amount of $ 5,000 to be paid on September 1, 1985. The first installment of $ 2,500 was due on January 2, 1982, and installments were to continue monthly through August of 1985. On December 1, 1981, the corporation redeemed 25 shares of stock from Melinda Walton, making petitioner the sole shareholder of the corporation. Petitioner began operating the business of the corporation in December of 1981, and gradually began changing the name of the business from Melinda Walton & Associates, Inc. to Walton, Deney & Associates and then to Deney & Associates. Other than changes in the name, there were no other changes in the form of the corporation. Payments of $ 2,500 per month were made to Melinda Walton during 1982 under the contract. Likewise, for the year 1983, the corporation paid to Melinda Walton the total sum of $ 30,000, constituting 12 installments of $ 2,500 a *539 month which were owed by petitioner to Melinda Walton for the purchase of the corporation's stock. The corporation, then known as Deney & Associates, issued to petitioner a Form W-2 for 1983, showing payments to her of gross income in the amount of $ 50,130. Of this amount, $ 30,000 represented payments made to Melinda Walton by the corporation on behalf of petitioner. Petitioner reported the full above amount on her individual tax return for 1983. Within six months of buying the stock of the corporation, petitioner became dissatisfied with Ms. Walton's performance under the contract, and the representations and warranties which she had made, and petitioner thereupon consulted counsel and brought suit against Ms. Walton in the State courts of Louisiana. In March 1985, the Louisiana State court decided the case in favor of petitioner. It rescinded the contract of sale mentioned above, and required the restoration of the stock purchased by petitioner to Ms. Walton. The Louisiana court judgment did not go further and provide for the award of any damages or other compensation to petitioner, but petitioner was relieved of all further obligations under the purchase contract. No amounts *540 paid by petitioner for the purchase of the stock were to be returned to petitioner under the judgment of the State court. With respect to her 1983 return, petitioner requested and was granted an automatic extension for filing until on or before August 15, 1984. Petitioner's return was actually filed on October 17, 1984. In 1985, petitioner amended her income tax return for the year 1983 so as to reduce her income by $ 30,000. This reduction represented the $ 30,000 in payments made on petitioner's behalf by the corporation to Melinda Walton. Petitioner's amended return was accepted by respondent and refund or abatement of tax was made accordingly. Upon later audit, however, respondent determined that the amended return was filed in error, that petitioner's reporting of income for 1983 had been correct as originally done, and respondent accordingly determined that petitioner was liable for the instant deficiency. In addition, respondent determined that petitioner was liable for an addition to tax in the amount of 15 percent under section 6651(a)(1), for having filed her return over two months late without reasonable cause. OPINION Petitioner contests the inclusion of the *541 amount of $ 30,000 in her 1983 income. Additionally, she claims that she is entitled to an ordinary business loss for the year 1983, or at least a long-term capital loss for 1985, when she had to return the stock which she had purchased. Finally, petitioner contests the imposition of the addition to tax against her for failing to file her 1983 return on time. ISSUE I. The principal issue in this case is whether petitioner was liable to report in her gross income the amount of $ 30,000 which was paid to Melinda Walton on her behalf by the corporation whose stock she was purchasing. We hold that she was required to so report it. Section 61 requires that a taxpayer report income from all sources derived. Clearly, the payment by the corporation to Ms. Walton on petitioner's behalf was the same as though the payment had been made directly to her and then petitioner in turn had paid Ms. Walton. . The money paid by the corporation to petitioner or on her behalf was correctly reported in the form W-2 which was given petitioner for 1983. That result is not changed by the fact that in 1985, a later year, the Louisiana State court *542 held in favor of petitioner and voided and rescinded the contract. The $ 30,000 paid on petitioner's behalf in 1983 was still her income, and she was obliged to report it for that year. ISSUE II. We likewise hold against petitioner on the second issue presented in this case. So far as the claimed business loss was concerned, there was no event which occurred in 1983 (including possibly the bringing of petitioner's lawsuit in the Louisiana courts) which would fix the amount of any business loss for petitioner; nor was the fact of any bad debt loss sustained in 1983 established, within the meaning of section 166. In order to qualify for a deduction for a business loss or a bad debt loss, the event fixing the fact of the loss must occur in the taxable year, which in this case is 1983. , affg. . The same reasoning applies whether petitioner claims a business loss in 1983 or a long-term capital loss. Regardless of whether petitioner had a loss, and whether it was an ordinary business loss or a capital loss, the event establishing this fact must have occurred in the year at issue. *543 ; see also . Here, no loss of any kind was realized in 1983, so far as this record shows. If there was a loss, it occurred in 1985, a year not before the Court, when petitioner's contract to purchase stock from Ms. Walton was rescinded by the State Court, and she had to restore the stock to Ms. Walton without further compensation. We make no holding in this matter, since the year 1985 is not before us. Suffice it to say that there was no loss event, either ordinary or capital, occurring in 1983, which is the year before us. ISSUE III. Finally, we hold that petitioner has failed to carry her necessary burden of proof to establish that the late filing of her return was due to reasonable cause within the meaning of section 6651(a)(1). . The only evidence presented in the case was the testimony of petitioner's accountant who simply testified that she did not have before her the necessary books and records of petitioner to enable her to file a timely return for petitioner for 1983. There *544 is no explanation of why petitioner did not provide these records to the accountant, nor is there any explanation of why, having already obtained one 60-day extension of time, petitioner did not attempt to obtain a further extension of time when it appeared that the return could not be completed and filed on time. No reasonable cause for a late return was shown here. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩